### ARGUED AND DETERMINED

##### IN THE

# SUPREME JUDICIAL COURT

##### OF

# MASSACHUSETTS.

---

ALFRED E. KENRICK & another *vs.* BOSTON AND ALBANY
RAILROAD COMPANY & another.

JAMES M. SEAMANS *vs.* SAME.

Norfolk. November 13, 1908. — May 19, 1909.

Present : KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Damages*, For property taken or injured under statutory authority. *Grade Crossings.*
*Limitations*, Statute of.

Under the provision of St. 1903, c. 478, limiting the time within which a petition
for damages caused by the abolition of a grade crossing must be brought to
"one year after the time the property is entered upon and work actually com-
menced thereon," it does not matter that the work actually begun was so trifling
in amount that no charge was made for it as part of the cost of construction, if
it was necessary to do it in constructing the street and it was done in good faith,
and there is nothing which requires that the work shall be prosecuted continu-
ously from the time when it actually was begun, although the fact that it was
not so prosecuted may be considered in determining whether the work actually
was begun at one time or another.

Under the provision of St. 1903, c. 478, limiting the time within which a petition
for damages caused by the abolition of a grade crossing must be brought to
"one year after the time the property is entered upon and work actually com-
menced thereon," an entry for the purpose of constructing any part of a way
laid out under the decree of the Superior Court confirming the decision of the
commissioners is deemed a taking possession of all the lands included in the lay-
ing out, and the limitation begins to run against a petitioner, whether the work
was begun upon his land or upon some other part of the way thus laid out.

Morton, J.   These are petitions for the assessment of dam-
ages caused by the taking of lands of the petitioners in the abo-
lition of a grade crossing in Brookline.   The taking was under
and pursuant to a decree of the Superior Court, dated February
25, 1905, confirming the report of a commission previously ap-
pointed.   The petitions were filed on March 5, 1907.   The
presiding judge found that there was an entry on land of the
petitioner Seamans, and also on land of one O'Hare, included in
the taking, on March 3, 1906, and an actual commencement of
work thereon, and that this set the time running within which
petitions must be brought as provided by R. L. c. 111, § 153, as
amended by St. 1903, c. 478; * and he ruled that the petition of
Seamans was therefore filed too late.   He also ruled that the
entry and the commencement of work on lands of O'Hare and
Seamans operated to set the time running within which the peti-
tion of the Kenrick Brothers should have been filed, and that
their petition was likewise filed too late.   The judge reported
the cases for our determination, and the question is whether
upon the facts found by the presiding judge these rulings were
right.

From the facts found it appears that the crossing abolished
was called the Kerrigan Place Crossing, and that as a part of
the alterations rendered necessary by the abolition of the cross-
ing it became necessary to construct an extension of a street or
place called White Place.   The town of Brookline was ordered
by the decree to do the work of constructing that street.   On
March 3, pursuant to the direction of the board of selectmen, the
town engineer and the superintendent of streets entered on lands
of one O'Hare and of the petitioner Seamans that were included
in the taking, and directed certain laborers in the employ of the
town to dig up and remove some of the soil at places that were
indicated on those lands.   A small quantity of loam was dug up
on the land of O'Hare, leaving a slight depression in the ground,
and some small heaps of earth were removed on the land of

---

* The amendment consisted in changing the time within which the
petition must be brought from " one year after the date of the decree of
the court confirming the decision of said commission " to " one year after
the time the property is entered upon and work actually commenced
thereon."

Seamans, leaving the surface even, and making in all about half a tipcart load which was carried away in a tipcart. The material thus removed had to be removed in order to construct the street. The amount of work done was small and did not appreciably affect the cost of the whole work of constructing the street, and no charge was made for it. On April 28, the employees of the town, under the direction of the superintendent of streets, filled up a hole on the Kenricks' land which had been left by the removal of a shed by the Kenricks, and, on and after May 10, the work of constructing the street was prosecuted continuously. A day or two after March 3, the town engineer reported to the board of selectmen that he and the superintendent of streets had on March 3 made a formal entry on behalf of the town, for the purpose of constructing the work required by the decree of the Superior Court, and this report was noted on the records of the board of selectmen and the clerk was ordered to notify the abutters to remove their buildings and materials from the land taken on or before April 20, 1906. Notices were sent to the petitioners that " The town has entered upon the work of constructing the alteration of Kerrigan Place as specified in the decision of the commission . . . which decision was confirmed by the Superior Court by decree dated March 22, 1905," and they were directed to remove their buildings and materials on or before April 20, 1906. These notices were dated March 12, and copies of the decision mentioned were enclosed. No inquiry was made by either of the petitioners in regard to the entry referred to in the notices, and neither of them had any actual knowledge of what was done on March 3, until after the petitions were filed.

Upon this state of facts we do not see how any other rulings could have been properly made than those that were made. There can be no question that there was an entry made on behalf of the town as required by the statute, on March 3, on lands of Seamans and O'Hare, for the purpose of constructing the street, and although what was done thereon was trifling in amount and not regarded as sufficient to warrant including it as part of the cost of constructing, nevertheless it was done, as the facts showed, in the actual commencement of the work of constructing the street on property which was taken in the laying out

of the street. The work, though unimportant in itself, was necessary to be done in constructing the street, and there is nothing to show that it was not done in entire good faith. Nothing requires that the work shall be prosecuted continuously from the time when it is actually begun, though the fact that it was or was not so prosecuted may properly be taken into account as one of the things to be considered in determining whether the work was actually begun at one time or another. No definition can be given as to what under any and all circumstances will constitute an actual commencement of the work of constructing a street or highway on property taken therefor, any more than such a definition can be given in the case of a mechanic's lien of the work or labor which will suffice to fix the time from which the thirty days are to be reckoned within which the statement provided for must be filed if the workman desires to preserve his lien on the building on which he has labored. In the latter case it has been held that a "very trifling" amount of work, if done in good faith, may be availed of by the workman to establish the date from which the thirty days will begin to run. *Monaghan* v. *Putney*, 161 Mass. 338. *McLean* v. *Wiley*, 176 Mass. 233. Each case must depend on its own facts. We think that on the facts in the cases before us the ruling that the Seamans petition was filed too late was correct.

In regard to the petition of the Kenrick Brothers, it is contended that the work which was commenced on March 3 did not operate to set the statute running as to them because it was not done on property taken from them, but on lands of Seamans and O'Hare. R. L. c. 111, § 153, as amended by St. 1903, c. 478, provides in effect that where land is taken for the laying out of a way rendered necessary by the abolition of a grade crossing the damages shall be paid primarily by the city or town, and if the parties cannot agree, they shall be determined in the same manner as damages are assessed in the laying out of ways in such city or town. Section 152 of the same chapter provides that the decree of the Superior Court confirming the decision of the commission shall constitute a taking of the land specified in the decision of the commission as necessary to be taken, and shall be a taking by the city or town if the land is to be used for a public way. No notice is required to be given to the landowner of the

laying out of the way and of the taking of his land therefor, as in the ordinary case of the laying out of a street or highway, because the statute requires notice and a hearing by the commission (R. L. c. 111, § 151), and the landowner will thus have notice of the taking and full opportunity to be heard in regard to the laying out of the way. Presumably he also will have had an opportunity to be heard again in the Superior Court upon the question of the confirmation of the decision of the commission. After land has thus been taken and a way has thus been laid out, and the city or town has been ordered to construct it in accordance with the decision of the commission, the public authorities are to proceed in the construction of the way, as in the case of ways laid out in the usual manner. Notices are given to parties to remove buildings, trees and other property, and the land taken is entered upon and the work of construction is begun and prosecuted as if the proceedings in the laying out of the way had been instituted and carried on by the city or town from the beginning. We discover nothing in the nature of the proceedings which leads us to infer that the Legislature could have intended that an entry for the purpose of constructing the way upon any of the lands taken should have any different effect in the cases arising under the statute before us from that which it would have in the case of a way laid out in the usual manner, nor do we see anything in the language of the statute which requires such a construction. The statute is to be construed in connection with the statutes in regard to the laying out of ways, and so construed, the provision that an entry for the purpose of constructing any part of the laying out shall be deemed a taking possession of all of the lands included in the laying out, applies to lands or property taken for the purpose of laying out a way rendered necessary by the abolition of a grade crossing as well as to lands or property taken in the laying out of other ways. In *Bates* v. *Boston Elevated Railway*, 187 Mass. 328, referred to by the petitioners, the statute provided that the petition should be brought by the petitioner " within three years after the construction of such railway upon or in front of his premises," thus expressly making the act of construction upon or in front of the petitioner's own premises the *punctum temporis* from which the time for the filing of a petition for the assessment of damages should begin to run. The

fact that by St. 1903, c. 478, entry and the actual commencement of work were fixed as the time from which the period for filing a petition should begin to run, instead of the decree confirming the decision of the commission, has no tendency to show that the Legislature intended entry and an actual beginning of work on land of each of the petitioners as necessary to set the time running as to him. It is to be noted, though we do not rely on it as a ground of decision, that the petitioners in the present cases had express notice on March 12, 1906, from the selectmen of Brookline that the town had entered upon the work of constructing the street, but they made no inquiry and took no steps to inform themselves as to what had been done. The result is that we think that the ruling that the petition brought by the Kenrick Brothers was too late was also correct. In accordance with the report the entry will be

> *Petitions dismissed both as to the railroad company and the town of Brookline.*

*E. B. Gibbs*, for the petitioners.
*W. D. Turner*, for the respondents.